UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

WILLIAM TRELEASE, ROBERT WEISENSEE,
CROMWELL MANAGEMENT CORPORATION,
CROMWELL SERVICES, INC.,

              Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE CO., LEX
BYERS, IFL CAPITAL GROUP, INC., JOSEPH
LANGLOIS, CHRISTOPHER CURRAN
individually and d/b/a CURRAN KELLY
INSURANCE ASSOCIATES, JACK KELLY,
individually and d/b/a CURRAN KELLY
INSURANCE ASSOCIATES, CURRAN KELLY
INSURANCE ASSOCIATES, TEMPLE H.
DRUMMOND AND TEMPLE H. DRUMMOND
d/b/a DRUMMOND & ASSOCIATES,

              Defendants

Civil Action No. 07-3841 (KSH)

**Opinion**

**KATHARINE S. HAYDEN, U.S.D.J.**

       The Court must decide whether a lengthy complaint, describing a complex program which defendants allegedly sold to plaintiffs with promises of retirement and tax savings, contains a federal question that confers jurisdiction upon the Court. Plaintiffs sued defendants in the Law Division, Middlesex County, alleging state law causes of action for breach of contract, breach of the duty of good faith, negligence, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, promissory estoppel, fraud, aiding and abetting fraud, malpractice, civil RICO, and declaratory judgment. Metropolitan Life Insurance Company ("MetLife"), with the consent of the other defendants, removed to federal court pursuant to 28 U.S.C. § 1441(a). (D.E. 1.) The plaintiffs

now move to remand the lawsuit to state court, arguing that their complaint does not present a federal cause of action. (D.E. 29.)

## BACKGROUND

The plaintiffs have filed a 76 page, 27 count complaint. (D.E. 1.)[1] According to paragraph 25:

> This case involves a fraudulent scheme, falsely touted as a legitimate retirement planning tax shelter, pursuant to which Plaintiffs were induced by Defendants to agree to the formation of an Employee Stock Ownership Plan ("ESOP"), to the creation of a corporation to function as a management company ("Services") with purported Subchapter S status under the Internal Revenue Code of 1986, as amended ("Code"), whose shares would be owned by the ESOP, and to enter into a complex series of agreements and transactions including the purchase of life insurance and annuities ostensibly designed to be enormously beneficial from a tax perspective, but in truth and fact that actually were designed to enrich and did enrich Defendants through the payment of fees, commissions and insurance premiums, all to the detriment of Plaintiffs. . . .

Plaintiffs William Trelease ("Trelease") and Robert Weisensee ("Weisensee")(collectively "plaintiffs") were shareholders, directors, and officers of Cromwell, an insurance brokerage company doing business primarily with the construction industry. (¶¶ 17, 20.) Cromwell's offices were located in a building owned by Arena Real Estate, LLC, 98% of which was owned by plaintiffs with the other two percent owned by defendants Christopher Curran ("Curran") and Jack Kelly ("Kelly"), who were partners in an insurance agency called Curran Kelly Insurance Associates ("CKA").[2] (¶ 18.) Starting in 1998, plaintiffs offered an insurance product to real estate developers and contractors that became increasingly successful over 2001-2005, earning plaintiffs high premiums and increased income. (¶ 26.)

In March 2003, Curran and Kelly set up a meeting between plaintiffs and Lex Byers ("Byers") of IFL Capital Group ("IFL"), and Joseph Langlois ("Langlois"), who along with Curran and

---

[1] The copy of the plaintiffs' complaint defendants attached to the petition for removal is missing several pages. Based on the parties' briefs, the Court was able to determine all of the causes of actions contained in the complaint.

[2] Curran, Kelly, and CKA are hereinafter referred to as the "broker defendants."

2

Kelly was an agent for MetLife. (¶ 27.)  The meeting was held in MetLife's offices.  (Id.)  Curran and Kelly represented to plaintiffs that Byers and Langlois were highly qualified, competent individuals with long success in retirement planning.  (¶ 28.)  At the meeting, Byers and Langlois proposed that plaintiffs participate in an investment called the ESOP Tax Shelter program ("program"), which they represented would offer plaintiffs retirement planning, life insurance, and tax savings. (¶¶ 28-30.)

The program called for plaintiffs to set up a management company, to be known as "Services," to run both Cromwell and Arena.  (¶¶ 39, 70, 72.)  The sole shareholder of Services was to be an ESOP, of which plaintiffs would be the trustees.  (¶¶ 39, 69.)  The broker defendants "undertook to participate in the administration of the ESOP and to keep books and records in connection therewith." (¶ 51.)  The program called for Services to "make an election under §1362 of the Code to be taxed as a Subchapter S corporation," which would allow "all of Services' earnings [to] pass through to the ESOP on a non-taxable basis." (¶ 39.)  The ESOP's earnings would be tax free and could be used to buy out employees' retirement shares.  (¶ 40.)  The program required plaintiffs to each purchase $7 million in life insurance and annuities in their names from MetLife, which Services would own. (¶ 45.)  Although the premiums would not be deductible, they would not be taxable since Services, a Subchapter S corporation, owned them.  (¶ 46.)  After plaintiffs purchased the insurance policies and annuities, it appears the premiums would be paid by Services through the ESOP.  Plaintiffs could borrow on the life insurances policies and would not have to pay taxes on the borrowed funds until their death.  (¶¶ 47-48.)  Plaintiffs paid in at least $640,000 as insurance premiums and over $ 2 million to purchase and fund the annuities.  (¶¶ 90, 99, 107.)

Plaintiffs signed the necessary documents and made the necessary payments to implement the program.  (¶¶ 52-81, 90-91, 99-100, 107.)  The broker defendants, MetLife, Byers and Langlois consistently reassured plaintiffs that the program was legal from a tax perspective, even when plaintiffs expressed doubts about the program.  (¶¶ 33-44, 45-48, 82-89, 95-98, 102-05.)  These reassurances occurred in meetings and telephone calls with Byers, Langlois, and the broker

3

defendants. (Id.) According to Byers and Langlois, MetLife's legal department had signed off on the program and other people used it successfully. (¶¶ 38, 85.) In an effort to further assure plaintiffs, Byers and Langlois gave them a letter prepared by Temple Drummond ("Drummond") of Drummond and Associates containing his opinion that the transactions comprising the program were legal. (¶ 98, 104, 105.)

On November 2, 2005, the State of New Jersey sent plaintiffs a notice that they owed $149,000 in taxes because no Subchapter S election had ever been filed for Services. (¶ 108.) Although the IRS granted them the Subchapter S election retroactively starting in 2006, the election was not available for state income tax purposes. (¶ 110.) Services terminated its election as of January 1, 2006 upon advice of new counsel. (¶ 111.) Plaintiffs allege that the program did not accomplish any tax savings and actually exposed them to substantial excise taxes for violating Section 409(p) of the IRS code. (¶¶ 116-18.)

Plaintiffs claims against the various defendants are set forth as follows: (1) breach of contract against broker defendants; (2) breach of covenant of good faith against broker defendants; (3) negligence against broker defendants; (4) breach of fiduciary duty against broker defendants; (5) negligent misrepresentation against broker defendants; (6) unjust enrichment against broker defendants; (7) breach of contract against MetLife; (8) breach of covenant of good faith against MetLife; (9) negligence against MetLife and Langlois; (10) breach of fiduciary duty against MetLife and Langlois; (11) negligent misrepresentation against MetLife and Langlois; (12) promissory estoppel against MetLife and Langlois; (13) unjust enrichment against MetLife and Langlois; (14) negligence against Byers and IFL; (15) breach of fiduciary duty against Byers and IFL; (16) negligent misrepresentation against Byers and IFL; (17) unjust enrichment against Byers and IFL; (18) fraud against Byers and IFL; (19) fraud against MetLife and Langlois; (20) aiding and abetting fraud against MetLife and Langlois; (21) aiding and abetting fraud against Byers and IFL; (22) aiding and abetting fraud against Drummond and Drummond and Associates; (23) aiding and

abetting breach of fiduciary duty against all defendants; (24) malpractice against Byers; (25) malpractice against Drummond and Drummond and Associates; (26) civil RICO (N.J.S.A. 2C:41-1 et. seq.) against MetLife, Langlois, Drummond, Drummond and Associates, Byers and IFL; (27) declaratory judgment against all defendants.

After plaintiffs filed their motion to remand (D.E. 29), Drummond and Drummond and Associates filed a motion to dismiss the complaint for lack of personal jurisdiction. (D.E. 38.) Other defendants sought leave to file motions to dismiss, but the Court denied their requests and ordered that further briefing and scheduling of dispositive motions would abide the decision on the motion to remand. (D.E. 43, 44, 45.)

## STANDARD

Section 1447(c) provides that "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The burden is on the removing party to establish the court's jurisdiction. Dukes v. U.S. Healthcare, 57 F.3d 350, 359 (3d Cir. 1995). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)(internal quotations and citations omitted).

## DISCUSSION

The Court must determine if plaintiffs state a "claim or right arising under the Constitution, treaties or laws of the United States . . . ." 28 U.S.C. § 1441(b). The term "federal issue" is not "a password opening federal courts to any state action embracing a point of federal law." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 313. The "well pleaded complaint" rule permits a plaintiff to remain in state court "so long as its complaint does not, on its face, affirmatively allege a federal claim." Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare

5

Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004). There is an exception when Congress intends to "completely pre-empt a particular area [so] that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).

Defendants based their removal under 28 U.S.C. § 1441(b) "on federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiffs' right to relief depends on the resolution of substantial questions of federal law including, but not limited to, the Internal Revenue Code ("IRC"), 26 U.S.C. § 1, et seq. and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq." (Notice of Removal ¶ 4.)

    A.  <u>Defendants' claim that plaintiffs' references to federal tax law raise a federal question</u>

Plaintiffs argue that they "are not contesting an IRS determination and are not calling into question the proper interpretation of federal tax law. Rather, plaintiffs allege the unreasonableness of defendants' interpretation of the law and advice in creating the ESOP and whether they committed fraudulent acts and misrepresentations and knew or should have known that the ESOP Tax Shelter Program was invalid." (Pl. Br. 33.) Defendants argue that the interpretation of tax law is substantial and essential to plaintiffs' complaint, thereby creating a federal question. (Carbin Br. 15.) They argue plaintiffs' claims are substantially based on the tax code because they require the Court to determine the legality of the program under the code. (Carbin Br. 19-21.) Specifically, they argue that plaintiffs' complaint sets forth a section entitled "Law Applicable to the Fraudulent Scheme" which enumerates sections of the tax code which allege tax consequences related to Subchapter S corporations and ESOPs, including sections 401(a) and 409(p) of the IRS code. (Compl. ¶¶ 119-24.) In addition, defendants argue plaintiffs' complaint indicates an "overriding reliance of their claims on the propriety of the [program] under the Federal Tax Code . . . ." (Carbin Br. 19.) They argue that since there are numerous references to the tax code in the complaint (see, e.g., ¶¶ 30, 40, 41), plaintiffs necessarily rely on the court's interpretation of the tax code to

6

determine their liability and damages. (Carbin Br. 19-22.) They also argue that by seeking declaratory judgment in count 27, plaintiffs are asking the Court to interpret the tax code. (Carbin Br. 17-19.)

In Snook v. Deutsche Bank AG, 410 F. Supp. 2d 519 (S.D. Tex. 2006), plaintiffs claimed the defendant bank gave improper and fraudulent tax advice and failed to disclose material information about a tax strategy it offered, as a result of which plaintiffs incurred tax liability. Id. at 521. The complaint alleged state law claims for "(1) declaratory judgment and unjust enrichment; (2) breach of contract and breach of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraud; (5) negligence; (6) negligent misrepresentation; (7) breach of contract; (8) declaratory judgment; (9) unethical, excessive, and illegal fees; and (10) civil conspiracy." Id. The district court held that there was no federal cause of action because plaintiffs did not "call the tax law into question or challenge the Government's application of that law, but rather challenge, among other things, Defendants' interpretation of the law and advice to Plaintiffs in that regard, and whether Defendants should have known the Strategy was invalid." Id. at 523.

In Stechler v. Sidley Austin Brown & Wood, LLP, No. 05-3485, 2005 U.S. Dist. LEXIS 39213 (D.N.J. Dec. 13, 2005); adopted 2006 U.S. Dist. LEXIS 1148 (D.N.J. Jan. 13, 2006)(Ackerman, J.), plaintiffs moved to remand a complaint they had filed in state court against a tax, legal and financial consulting firm that allegedly had developed an unlawful tax shelter. 2005 U.S. Dist. LEXIS 39213, *3. The 110 page, 210 paragraph complaint contained state law causes of action including breach of contract, breach of fiduciary duty, negligent misrepresentation, fraud, professional malpractice and civil conspiracy. Id. Judge Ackerman adopted Magistrate Judge Falk's report and recommendation to remand, concluding that the issue was not the interpretation of federal tax law, but whether the representations or advice given by the defendants were fraudulent or negligent. 2006 U.S. Dist. LEXIS 1148, *3-4. The opinion concluded that the interpretation of the tax code was a minor, not substantial, issue, and that the courts would be open to larger numbers of cases if state law claims

were deemed to be federal causes of actions simply because a plaintiff alleges an improper interpretation of federal law. Id.

Here, plaintiffs are alleging defendants' interpretation and advice concerning federal tax law was fraudulent or negligent. Plaintiffs claim that they were sold a product that was supposed to produce tax savings but instead caused them to incur more taxes, while the defendants reaped the benefits of plaintiffs' purchases of their investment products. The substantial issues that plaintiffs bring for adjudication are whether defendants breached their contract obligations, negligently or fraudulent misrepresented the benefits of the program they sold to plaintiffs, breached any fiduciary duties they owed plaintiffs, were unjustly enriched, committed malpractice, or violated New Jersey civil RICO laws. These are substantially the same issues that were before the district courts in Snook and Stechler.

Those decisions offer persuasive and practical reasons for remanding. As the district court noted in Snook, "there is a potential for a shift in the division of labor among the state and federal courts if this Court were to deny Plaintiffs' motion because this case is really no different from hundreds of state malpractice, negligence and breach of fiduciary duty cases filed in state court each year." Snook, 410 F. Supp. 2d at 523 (quotations and citations omitted). Allowing plaintiffs to litigate this case here "would open the federal courts to garden variety malpractice, breach of duty, and similar state law claim in which the allegation is that the defendant gave fraudulent or negligent advice based on an unreasonable or otherwise faulty interpretation of federal law." Id. See also Stechler, 2006 U.S. Dist. LEXIS 1148, * 4.

In Count 27, plaintiffs ask this Court to determine whether there are "any taxes of any nature whatsoever, . . . that might in the future be incurred by any or all Plaintiffs as a result of the ESOP Tax Shelter Program and or the wrongful actions and conduct of Defendants . . . ." (Compl. ¶ 411.) The crux of their claim requires the Court to determine their liability under the IRS code, which is forbidden under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). See, e.g., Chirik

8

v. TD BankNorth, N.A., No. 06-4866, 2008 U.S. Dist. LEXIS 3939 (E.D. Pa. Jan. 18 2008); Gavigan v. Comm'r, No. 06-942, 2007 U.S. Dist. LEXIS 31060 (D. Conn. Apr. 27, 2007).  The parties do not reference the section 2201(a) exception, apparently assuming the Court would be applying state declaratory judgment jurisprudence.  This is by no means assured.  Thus, assuming federal jurisdiction and the federal Declaratory Judgment Act governs, the claim would not be cognizable.  Even in the absence of this preclusion, the overwhelming nature of the claims as state causes of action brought by aggrieved buyers of a product they claim did not work strongly militates against accepting this count as a basis for federal jurisdiction under the same reasoning asserted in Snooks and Stechler.

  B. Defendants' claim that the complaint contains certain counts that are completely preempted by ERISA

Defendants argue that certain allegations in the complaint fall within the ambit of section 502(a) of ERISA because plaintiffs, as plan participants, allege the broker defendants breached their fiduciary duties by failing to properly administer the ESOP.  (Carbin Br. 26; Pendleton Br. 3.)  Defendants' arguments focus on a line that appears in paragraphs 131, 136, 141 and 149, alleging respectively breach of contract, breach of the covenant of good faith, negligence, and breach of fiduciary duty, to the effect that the broker defendants "fail[ed] to administer the ESOP and related profit sharing plan."  Defendant Langlois also argues that "misrepresentations as to the tax consequences of an ERISA plan are governed by ERISA's civil enforcement scheme and, therefore, are completely preempted." (Pendleton Br. 2.)

The term "ERISA" cannot be used as a magic talisman to automatically invoke federal jurisdiction.  For the court to convert a state law claim into a federal cause of action, the claim must fall within ERISA's civil enforcement provisions, section 502(a).  Lazorko v. Pa. Hospital, 237 F.3d 242, 248 (3d Cir. 2000).  Section 502(a) provides:

> (a) Persons empowered to bring a civil action. A civil action may be brought
>   (1) by a participant or beneficiary—

>> (A) for the relief provided for in subsection (c) of this section, or
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109];
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan; . . .

29 U.S.C. § 1132(a)(1)-(3).[3] "Congress has clearly manifested an intent to make [state law] causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." Taylor, 481 U.S. at 66. This "complete preemption" provided by section 502(a) is distinguishable from substantive preemption under section 514(a), which provides ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Third Circuit noted that "[u]nlike the scope of [§ 502(a)] which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court." Lazorko, 237 F.3d at 248. Thus, a state law cause of action "related to" an ERISA plan will become a federal claim only if it falls under the section 502(a) civil enforcement provisions. See Pascack Valley Hosp., Inc., 388 F.3d at 400.

Defendants fail to show plaintiffs' claims fall within section 502(a). Defendants' argument that plaintiffs are plan participants is belied by a specific allegation in the complaint which states "Trelease and Weisensee signed a Trust agreement for the ESOP, designating themselves as Trustees, with the power to hold, administer, and invest the trust fund . . . ." (Compl. ¶ 69.) There is nothing in the complaint to suggest either Trelease or Weisensee are participants or beneficiaries of the ESOP.

---

[3] While defendants state that plaintiffs' claims fall under section 502(a), they fail to say which subsection of the statute the claims fall under. Defendants appear to argue plaintiffs' claims could fall under one of the first three subsections of section 502(a).

The complaint also does not indicate that any defendant was acting as a fiduciary for the ESOP. Plaintiffs allege that "[t]he Broker Defendants undertook to participate in the administration of the ESOP and to keep books and records in connection therewith." (Compl. ¶ 51.) A fiduciary must have some discretionary authority or control over the management or administration of the plan. 29 U.S.C. § 1002(21)(A)(i)-(iii). See also Wachtel v. Health Net, Inc., 482 F.3d 225, 229 (3d Cir. 2007). Performing ministerial tasks such as record keeping does not qualify someone as a fiduciary under ERISA. Confer v. Custom Eng'g Co., 952 F.2d 34, 39 (3d Cir. 1991)("Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles."). Defendants have not shown what discretionary authority Kelly, Curran, or CKA have over the plan, and the complaint does not indicate they have any such control.

Moreover, this case is distinguishable from the cases cited by defendant Langlois in support of his argument that misrepresentations about the tax consequences of a plan are governed by section 502(a). Those cases were brought by plan beneficiaries seeking relief against plan administrators with discretionary authority to approve or deny benefits. For example, in Griggs v. E.I. Dupont de Nemours, 237 F.3d 371 (4th Cir. 2001), the plan administrator breached his fiduciary duty by failing to give proper eligibility information and tax consequences on a lump sum rollover. Similarly, in Farr v. U.S. West Communications, Inc., 151 F.3d 908 (9th Cir. 1998), the plan administrator breached his fiduciary duty to plan beneficiaries by providing false, inaccurate, and incomplete information about potential adverse tax consequences by taking their lump sum distributions. The previous analysis has shown plaintiffs are not plan beneficiaries and defendants are not fiduciaries as defined by ERISA. The Court holds that defendants have failed to show plaintiffs' claims are subject to complete preemption pursuant to section 502(a).

C. Attorney's fees

Plaintiffs seek an award of attorney's fees pursuant to section 1447(c), arguing that MetLife did not have a reasonable basis for removing the complaint. The Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."[4] <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005). In this district, Judge William Martini denied attorneys fees on a remand motion where removal was premised on ERISA and the IRS code, concluding "distinctions between the jurisprudence governing removal of cases such as this are significantly fine such that Defendants could have had a legitimate, albeit mistaken, belief in the removability of this case." <u>Kantha v. Pac. Life Ins. Co.</u>, No. 06-905, 2006 U.S. Dist. LEXIS 63285, *8 (D.N.J. Sept. 6, 2006). In this matter, the Court cannot say that the arguments presented by MetLife, joined in by the other defendants, were objectively unreasonable[5]

## **<u>CONCLUSION</u>**

The Court will not treat "'federal issue' as a password opening federal courts to any state action embracing a point of federal law," <u>Grable</u>, 545 U.S. at 314, and grants plaintiffs' motion to remand. (D.E. 29.) The motion to dismiss filed by Drummond and Drummond and Associates is denied as moot. (D.E. 38.) An appropriate order will be entered.

Dated: 8/29/08 /s/Katharine S. Hayden
Katharine S. Hayden
United States District Judge

---

[4] Plaintiffs do not mention this standard in either their moving or reply brief.
[5] In their opposition brief, defendants argue the Court should award MetLife its attorney's fees. (Carbin Br. 30-31.) Based on the decision to remand, this request is denied.

12